THOMAS ORR *v.* BANK OF THE UNITED STATES, WILLIAM CREIGHTON, AND WALTER DUNN.

Corporation not liable to be sued in an action of assault and battery; can not be joined in such action with other defendants. When so joined, writ is abatable as to all.

THIS cause was argued before all the judges in Ross county, at December term, 1821, by King and Atkinson for the plaintiff, and W. K. Bond for the defendants. The case is fully stated in the opinion of the court by Judge Burnet.

KING and ATKINSON for plaintiff:

Two questions grow out of the demurrers in these cases. 1. Whether, if a corporation and individuals be joined together in trespass, the *individuals* can take *advantage of such joinder;

admitting the corporation is not liable in trespass. 2. Whether a corporation is liable to be sued in trespass. The' law is clearly settled as to the first question, however it may stand as to the last. The law read by the opposite counsel on the trial, from 1 Chit. 75, to wit, "that if several persons be made defendants jointly, where the tort could not in point of law be joint, that they may demur," etc., is not denied. It is good law, but does not apply to this case. It applies *only* to torts, which, from their *nature*, can only be committed by *one person*, and can not be committed by several *jointly*, as verbal slander. This is the case put in 2 Saunders, 117, C. n., cited by Chit. The reason of this law is obvious. One of several defendants only *can be* guilty in such case, and it can not appear from the declaration *which* it is.

The tort that we complain of is one where several persons, in point of law, may be jointly guilty; and the joinder of more or less persons than may be guilty or liable, constitutes no objection. 1 Chit. 75.

There are, however, three cases cited in 16 East, 10, *precisely* in point, where the objection was taken and overruled.

If in England, as in New York, where they have adopted the English practice, any objection could be raised on account of the *different processes* requisite to compel an *appearance*, that objection can not be taken here in the State of Ohio. See 18 Jud. Acts, 364, sec. 14. The English and New York practice of entering an *appearance* is unknown to us. We have the same process to bring both into court. The judgment is the same, and final process against both the same, except that a *capias* and a *ca. sa.* here, as well as in England, could not issue against a corporation to *any effect*. It would be a singular kind of logic that would authorize the conclusion, that because a party could not make use of one *as well as the other* of the two kinds of mesne process provided by law, he has no right to any one of them.

The first question, then, it is believed, must be with the plaintiff, and the demurrer overruled as to Creighton and Dunn.

On the second question, it may be observed, in the first place, that from the nature of it we could not reasonably expect to find many decisions precisely in point. Corporations are few in number compared with individuals. We ought rather to be surprised that we find so much law on the subject. If similar injuries have been committed in England by corporations, the remedy against any and

all the *members* being so clear, and the obstacles arising from their
38] *process so great, it could hardly be expected that a single
case of trespass against a corporation could be found in their books.

The fundamental principles and settled maxims of the law ought
always to be kept in view and applied in settling legal questions,
and this especially when but few direct adjudications on the sub-
ject are to be found.

Every right is said to have a remedy, and every injury should be
redressed by those who occasion it.

These rules are applicable to all *natural* persons, and if *artificial*
persons come not within their reach in every case, the *exception*
ought to be clearly shown, as well as the *reason* upon which the
exception is founded. .

If a master bid his servant do a trespass, and he does it, the
master, as well as the servant, is liable, upon the maxim of law,
that he who does a thing by another, does it himself. There is also
another reason why the law holds him liable, namely, that the per-
son actually committing the injury, may not be a responsible per-
son, and adequate redress can not be obtained from him alone.

So great a regard has the law for the preservation of the " rights
of persons," that it considers every one a principal, who has, in any
way, been concerned in bringing about an injury to them. The
anxiety of the law to redress such injuries, is manifest, also, in giv-
ing a remedy which is not subject to the embarrassments incident
to pleadings in other cases ; for whether *less* or *more* than are liable,
are joined in the suit, no advantage, to delay the redress sought,
can be taken on that account.

With these preliminary observations, I will proceed, first, to ex-
amine very briefly the authorities relied on by defendant's counsel.

Mr. Chitty, 1 Chit. 66, says : " Corporations may be sued in that
character in many instances for damages arising from neglect of a
duty imposed on them by particular statutes, but they can not in
general be sued in that character in trespass or replevin, and the
action must be brought against each person who committed the tort
by name ;" and cites 8 East, 229, 230, which was an action of eject-
ment against two persons *as bailiffs* of a corporation. It was said
by Lawrence, Judge, that " trespass does not lie against a corpora-
tion." On this case it may be observed :

1. That no such question arose in the case, or was decided by it.

What the judge said, therefore, was a mere casual *dictum*, and not at all called for by the case.

2. The court *did* decide, that the action could not be maintained *against the bailiffs *as such,* because *their* possession *as such* [39 was the possession of the corporation, which was *virtually* deciding that the action should have been brought against the corporation.

3. It was contended by defendant's counsel in that case, that the action should have been against the corporation.

The two authorities next cited by Chitty, I have not been able to find, and can therefore make no comments on them.

He next cites Vin. Ab. Corp. K. pl. 22, which says : "A corporation can not commit a trespass but by their writing under their seal." Broke, 34, is cited, and Ib. P. pl. 2. " Per Throp.—Trespass does not lie against commonalty, but shall be brought *against the persons by their proper names;* for capias nor exigent lies against commonalty." Cited from Broke. Ib. 2, 15. " Trespass does not lie against a corporation, viz: by the name of corporation, but against the persons who did it, by their proper names; for capias nor exigent does not lie against commonalty." Cited from Broke, 43. Bacon Ab. is also cited, but nothing material can be found in it. The last authority cited by Chitty is 1 East, 555, which was an action *on the case* by a member of a corporation against the other members, for depriving him of a corporate privilege. The corporation had authority to hold a court, called a water court, and at one of its sittings disfranchised the plaintiff. The King's Bench decided that the water court had erred in their judgment, and to maintain the action against the members, it was necessary to prove *malice.* The decision was a correct one, for the injury complained of arose from a *judicial error.* The marginal note of this case does not present the case decided. The case has no bearing on the case under consideration, as the *quo animo* is of no consequence in trespass. 1 Chit. 129, 130; 6 Bac. Ab. G, 589, last ed.

It is also said in Comyn's Digest, Franchise F. 19, that " process of outlawry does not lie against a corporation aggregate, and *therefore* trespass does not lie against a corporation, but against the particular persons only ; for a capias and exigent do not go against a corporation." Broke, 43, is cited.

I have been thus particular in quoting *at length* the authorities referred to by Chitty because the *reason* upon which the law laid down in them is founded, is *also* stated. It should be particularly

41

remarked, that all the authorities above referred to, which have any bearing on the case, *ground* the law laid down in them upon two reasons *only.* 1. Because a capias and exigent do not lie against a corporation. 2. Because a corporation can only commit a trespass by their writing under their common seal.

40] *In considering the first question in this case, we have shown that the first reason arising from *process* has ceased to exist, at least in the State of Ohio. When the *reason* of the law ceases, the law itself ceases.

As to the second reason, if it is a good one at this day, it would be enough to show, *on the trial,* that the defendants did, by their writing, etc., commit the trespass. And it does not properly become a question in the present stage of the case, because it certainly could not be necessary so to allege the fact *in the declaration,* if it were necessary to prove it on the trial. But if such ever were the law in England, modern decisions show that such is not the law now, either there or in this country.

It is a notorious fact, without referring to any decisions, that corporations now-a-days make little or no use of their seals, unless it be in such cases where the law requires it of *individuals.* *Formerly* a corporation was held liable in no case of contract, unless their seal could be shown against it. It seems, however, to be the policy of the law latterly and the inclination of courts, to consider them as possessing almost the *same capacities* and the *same facilities* in the transaction of their business that any *natural* person exercises. 12 Johns. 227; 14 Johns. 119; 7 Cranch, 297. The case in 12 Johns. is an important one throughout.

Corporations are treated in equity as natural persons are, and subject to the same rules. Ejectment lies *for* and *against* them, which supposes that they may be trespassed upon, and that they may trespass upon others. And that a corporation is answerable, *in their corporate capacity,* for a trespass, is not only *reasonable,* but well supported by the cases in 16 East, 6; 7 Mass. 169, and the principles decided in the cases above cited.

Every reason to be drawn from analogy, and the fundamental rules and maxims of law and equity, bear equally hard, *in principle,* against a corporation as against an individual; and there is no reason, rule, or maxim, either in law or equity, which claims for them an exemption. The objection arising from process does not apply here in this state, if it does anywhere, at this day; and that

42

arising from the necessity of a corporation doing a tort under, etc., has become obsolete. 1 Bac. 11; Abatement in Torts, 36, 12, 621; Eliz. 143; 1 Bac. 30.

The argument on the other side was not furnished to the reporter.

*Opinion of the court by Judge BURNET, delivered December term, 1822. [41

This is an action for an assault and battery, and false imprisonment. The declaration is filed in the common form, charging the defendants jointly with the commission of the trespass, as though they were all natural persons. The defendants have demurred generally. On the argument two principal questions were raised and discussed.

1. Whether a corporation aggregate is liable to be sued by its corporate name, in an action of trespass for an assault and battery, and false imprisonment.

2. Whether, if they be not so liable, the defendants, Creighton and Dunn, can take advantage of the joinder on this demurrer.

On the first question, Chitty has been cited, 1 vol. 66, where he says, corporations may be sued in that character, in many instances, for damages arising from neglect of duty imposed on them by particular statutes, but they can not, in general, be sued in that character, in trespass, or replevin. The action must be brought against each person by name, who commits the tort.

In 8 East, 230, Lawrence, Justice, says, trespass does not lie against a corporation. Thorp, Justice, says, trespass does not lie against a corporation aggregate by its corporate name, for a capias and exigent do not lie against it. 22 Ass. 67. A corporation can not beat nor be beaten, nor commit treason, or felony, nor be outlawed, etc. 21 Edw. 4, 7, 12, 27, 67. They can not be assigned, 1 Bac. Ab. 507; nor outlawed, 10 Co. 32; nor attached, Ray. 152. No replevin lies against them by the name of their corporations, Brownl. 175. They can not be declared against in custody. 6 Mod. 183. They are not indictable, though the particular members are. 12 Mod. 559. They can not sue as a common informer. 2 Stra. 1241. For torts they must be sued individually. Salk. 192. Trespass does not lie against a corporation, but against its members. 4 Com. Franchise F. 19.

**43**

A corporation can not commit a trespass but by their writing under their seal. Vin. Ab. Cap. K. 22. Trespass does not lie against commonalty, but shall be against the persons, by their proper names, for capias and exigent lie not against commonalty. Ib. P. 2. Trespass does not lie against a corporation, viz: by the name of corporation, but against the persons who did it, by their proper names, for capias and exigent do not lie. Ib. 2, 15. As outlawry does not lie against an aggregate corporation, therefore trespass does not lie against them, for a capias and exigent do not 42] go. 2 Sell. 149; *2 Imp. 675 ; Bro. Corp. 43. A corporation can neither maintain, nor be made defendant to an action of battery, or such like personal injuries, for a corporation can neither beat, nor be beaten, in a body politic. 1 Blac. Com. 503. It appears also that the civil law ordains (in conformity with this rule) that for the misbehavior of a body corporate, the directors only shall be answerable in their personal capacities. Wooddison, in his lecture on corporations, 1 vol. 494, is very clear and explicit on the subject. He says, "It is incident to all bodies politic, to sue and be sued, by their name of incorporation, but it is manifest that this must be restricted to particular actions ; thus corporations can neither be plaintiffs nor defendants in actions of assault and battery."

The case in 12 Johns. 227, cited by the plaintiff, shows that the law in relation to the liability of corporations, is so changed by the course of modern decisions, that they are now held responsible on promises, express or implied, and that assumpsit may be maintained against them on such promises. But because the law has been changed in relation to contracts, it does not follow that it is also changed in relation to torts, so as to render a corporation liable, generally, to actions of trespass, or for other torts, by persons not belonging to the body corporate, at least without showing that they were done by an authority from them, granted in pursuance of their charter. In short, the only question decided in that case was, that a corporation may make a valid contract, not under seal ; and this point being settled, there was no incongruity or falsity apparent in the declaration, and therefore the court very properly decided that they would not stop and inquire, in that stage of the proceedings, whether the contract was made in such manner, or by such persons as to be binding on the defendants. The objection in that case was taken on the broad ground that assumpsits will

not lie, under any circumstances, against a corporation, but the court, having shown very clearly that the position was not tenable, overruled the demurrer without further inquiry; and it may be remarked, that the reasoning of the court is confined exclusively to matters of contract. The same observation may be made respecting the case of the Bank of Columbia *v.* Patterson, cited from 7 Cran. 299, which was an action of assumpsit for work and labor. Various questions arose in the progress of that cause; none of them, however, having a direct bearing on the case now before the court. The point most analogous was, that whenever a corporation is acting within the scope of the legitimate purposes of its *institution, all parol contracts made by its authorized agents [43 are express promises of the corporation, and all duties imposed on them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action may well lie.

The case of Dunn *v.* The Rector, etc., of St. Andrews' Church, 14 Johns. 118, was also assumpsit for work and labor. The only question agitated was, whether an action of assumpsit on an implied promise can be maintained against a corporation, which was decided affirmatively, on the authority of the two cases just considered.

Much reliance has been placed, by the plaintiff, on the case of Riddle *v.* The Proprietors of the Locks and Canals on Merrimac river, 7 Mass. 169. This was an action on the case, for not sufficiently opening and keeping in repair a certain canal, by reason of which the raft of the plaintiff grounded, in attempting to pass it, and was damaged. A verdict was rendered for the plaintiff, and a motion for a new trial having been overruled, a motion was made in arrest of judgment, on the ground that at common law no action lies against a corporation for a tort, because, among other reasons, judgment in such an action is entered with a capiatur, which would be absurd against a corporation. The court, in giving their opinion on this point, seem to admit the doctrine in 21 Edw. 4, 12, 27, 67, that a corporation can not be beaten, nor beat, nor commit treason, or felony, nor be imprisoned for a disseisin with force, nor be outlawed, and they add that these principles result from the nature of an aggregate corporation. But in remarking on the opinion of Thorp, Justice, in 22 Ass. pl. 67, in which he says that trespass does not lie against a corporation aggregate by its corporate name, they express doubts. Thorp's opinion, they say, has

**45**

been overruled, as to certain trespasses, and referring to some of the authorities in 16 East, from which they say it is very clear that some actions of trespass might at common law be maintained against aggregate corporations, they conclude that as in these cases no capiatur could be entered, the omission of this entry could be no objection to actions on the case. This concise statement is sufficient to show that the question now in hand did not necessarily arise. The point determined was, that trespass on the case would lie, and that judgment in such an action might be entered without a capiatur, and for this purpose only, the authorities relating to trespass and other torts were referred to. But it can not escape the most careless observer that neither the case decided, nor those 44] referred to, support the position *now · contended for, that assault and battery can be sustained against a corporation aggregate. Thorp's opinion was questioned only as to certain trespasses, and the court went no farther than to say, that some actions of trespass might be maintained, from which the conclusion naturally follows that, generally, that action can not be maintained, and they admit that a corporation aggregate, from its nature, can neither beat nor be beaten, which seems to be decisive of the question we are considering. It was urged by the plaintiff that the reason on which the law, under consideration, was originally founded, had ceased to exist, and that therefore the law itself has ceased, in conformity with the maxim, *cessat ratio, cessat etiam lex.* But however true this maxim may be, in the general, it is subject to exceptions. There are many principles of common law, settled on reasons that have ceased, and many more on reasons that have not only ceased, but are now forgotten, that are still in full force; as for example, it is law at the present day that debt and trespass can not be joined, although the reason of this law no longer exists, which was, that in debt the process was summons, on which a fine was paid to the king, in proportion to the sum demanded, but in trespass the process was a capias, and the court set a fine in proportion to the offense.

It is not, however, admitted that all the reasons, or that the most weighty reasons of the law in question, have ceased, for although the distinction of process is done away by our statute, yet it remains a truth that a corporation aggregate, as such, can not commit the act charged in this declaration, as they have no personal existence, and can neither beat nor be beaten. An action for an

assault and battery, committed on a corporation aggregate, in their corporate character, would be a novelty in judicial proceedings; and yet it appears to be as contrary to reason and common sense, that they should be the agents in such a trespass, as it is that they should be the objects of it. It is a fact entitled to some weight, that among the multitude of adjudged cases relating to corporations, from the Year Books to the present day, not one can be found that decides the principle as it is contended for by the plaintiff. Although it forms no objection to an action that such an one has never before been brought, yet the fact affords strong presumptive evidence that the law is against it.

On the whole, whatever exceptions may exist to the rule, that actions of trespass generally do not lie against corporations, it is evident that the action now under consideration can not be one of *those exceptions, and therefore that it can not be sustained **[45** against the bank.

The second question is, whether the defendants, Creighton and Dunn, can avail themselves of the demurrer, admitting that the corporation could not have joined in the tort, and that the action can not be sustained against them.

The law as laid down in 1 Chitty, 74, seems to be well established, that if several persons be made defendants jointly, where the tort could not in point of law be joint, they may demur, and if a verdict be taken against all, the judgment may be arrested or reversed on error. In other cases, says Chitty, where in point of law several persons may be jointly guilty of the same offense, the joinder of more persons than were liable, etc., constitutes no objection; one of them may be acquitted, and a verdict taken against the others. It was alleged in argument, that the concluding part of this authority limits the application of the preceding part, to torts of which only one person can be guilty, but there does not appear to be any necessity for such a limitation. On the contrary, to give effect to the whole passage, the concluding part must be taken with the qualification evidently imposed by the preceding part of it, and naturally implied by the terms used in it. The meaning of the passage seems to be, that in cases where in point of law all the defendants named in the writ may be jointly guilty of the offense charged, it is no objection that some of them are not guilty, for these may be acquitted, and a verdict taken against the others. This construction will give to the whole passage its

47

proper effect, and remove the apparent discrepancy produced by the opposite interpretation. It appears also to be required by other authorities applicable to the subject. For example, whatever proves the writ false, at the time of suing it out, shall abate it entirely, and if the falsity appear on the record, advantage may be taken of it by motion, or on demurrer. 1 Bac. Abr. 11, n. As if the writ issue against two persons, and one of them be dead before it be taken out, or if there be no such person as one of them, *in rerum natura*, or if in a *precipe quod reddat*, against two, one of them have the whole tenancy in himself, the writ shall abate at common law, though in the last case it is now saved by St. 25 Ed. 3. The question, then, occurs in the case before us: Was not the writ false at the time it was taken out, and does not this appear from the declaration? It charges an assault and battery to have been jointly committed by a corporation and individuals, when, in 46] point of law, a corporation can not commit a *battery, either separately or jointly with others. It therefore charges the defendants with the commission of a joint act, which, in contemplation of law, they could not have jointly committed, and must, of course, be false.

It appears to be immaterial whether the objection to the joinder arise from the nature of the act, or from the character of the agent. Verbal slander can not be jointly committed by two, or more, therefore two defendants can not be joined in that writ. A corporation can not commit an assault and battery; that tort, therefore, can not be jointly committed by a corporation and others, consequently a writ that charges two or more persons with verbal slander, or that charges individuals with a battery, committed jointly with a corporation, can not be good, and for the same reason, because it presents a case in either instance in which the tort complained of can not be jointly committed by the defendants who are jointly charged. The writ would be false by the doctrine cited from Bacon, and the joinder would be bad on the authority of Chitty.

By what course of reasoning, or by what analogy, are we justified in limiting the operation of the principle to the nature of the tort, excluding the character of the agent? The reason of the law unquestionably is, that the declaration charges an act impossible in itself—it is false, and certainly it is not the less false because the impossibility of the joinder arises from the physical in-

Orr *v.* Bank of U. S. and others.

ability of one of the defendants to participate in the act. The rule is, that several persons can not be made defendants jointly, when the tort can not in point of law be joint. In the case before us, it is impossible that all the defendants have joined in the tort; as to them, therefore, it can not be joint, and this impossibility is as striking and as operative as if it had arisen from the nature of the tort. It was admitted in argument, that a declaration charging two persons with verbal slander, is bad, on demurrer. There can be but one reason for this, which is, that the defendants could not, under any circumstances, jointly commit the act charged. And may it not be confidently asserted, that in the case under consideration, the defendants could not, under any circumstances, jointly commit the injury charged against them ? On what foundation, then, can we maintain the distinction that has been contended for ?

It is true that the case in 2 Saund. 117, cited by Chitty in support of his doctrine, was a case of slander, but it is believed if that case had been the one now before the court, instead of the case of slander, it might have been argued with equal plausibility, that the doctrine in Chitty would not embrace the case of slander.

*On this branch of the subject, the plaintiff has relied on [47 the cases cited in Yarborough *v.* The Bank of England, 6 East, 10. These, however, go no further than to show that there have been instances of trespass against corporations, in which individuals were joined ; but it does not appear that the question was raised in either of them, whether the action could be supported. In one of them, the objection was to the process ; in the other, to the joinder, and in neither was the objection sustained. Broke, 34, is introduced as saying, " the better opinion was, that the writ was good." Yet the same author, pl. 43, tells us that trespass does not lie against corporations. It may also be observed, that if the defendants admitted (as it appears they did, without putting the question to the court) that trespass could be sustained against a corporation, they waived the principal objection to the joinder, to wit, the falsity of the writ, depending on the fact that one of the defendants could not, in point of law, commit the act, and therefore that the others could not have committed it jointly with him.

But in deciding the case before the court, it is not intended, nor is it necessary to assume the principle, that trespass will not lie in any case against a corporation, or that individuals may not be

joined in the same writ with a corporation, for a tort which they may jointly commit. The doctrine is intended to be carried no farther than to actions of assault and battery. The case of Yarborough was trover, and Lord Ellenborough, in giving his opinion, says, that the defendants, as a corporation, can do no act but through the instrumentality of others, and that they can not, as a corporation, be subject to the process in trespass, because the remedies which attach on living persons, can not be applied to bodies merely politic and of an impersonal nature, but that wherever they may competently do or order an act by their common seal, they are liable to the consequences of such act; and to support his position and illustrate his meaning, he cites several actions against corporations for false returns. It may be added, that we should not naturally expect, in a case like this, to find a decision of the question on which the case in hand depends, and it may be safely assumed, that the question is not settled, either by the principal case or by the authorities cited. The plaintiff has also contended that the fundamental principles and settled maxims of the law ought always to be kept in view, one of which is, that every right must have a remedy, and every injury ought to be redressed. This is admitted, but it does not follow that the party complaining must have a choice of remedies, nor does the doctrine now advanced interfere with this acknowledged maxim; *for although it be alleged that a corporation, as such, can not be made a defendant in an action of assault and battery, it is admitted that every individual who counseled, procured, or aided in the commission of the trespass, is liable. It is true in this case, as in every other, that the individuals held responsible may be insolvent, but the law is not chargeable with this evil, nor should it be condemned because it does not multiply remedies for the purpose of guarding against it. It was also urged that this demurrer can not be supported, unless the case be made an exception to this general rule or maxim, and that before this be done it ought to be shown clearly that it is an exception, and that it comes within the reason on which exceptions are founded. The case, however, is not considered as forming an exception, for the sustaining of the demurrer does not deprive the plaintiff of a remedy, but merely decides that he has sought one which the law does not give him. The rule requires nothing more than that each right should have a remedy, or one remedy. It can not, then, be violated by a de-

cision that the plaintiff has had recourse to an improper remedy, unless it be also a fact that the law has provided no other. But this is not the case. A remedy exists, which has been pointed out, and to which the party injured may have recourse.

The plaintiff might have entered a *nolle prosequi* as to the bank, and proceeded against the other defendants, but he has thought proper to insist on his right to sustain the action against all the defendants, and must now submit to the consequences of the demurrer, which must be sustained.