DECEMBER TERM, 1862.    555

Dubuque Female College v. The District Township of the City of Dubuque.

DUBUQUE FEMALE COLLEGE v. THE DISTRICT TOWNSHIP OF THE CITY OF DUBUQUE.

1. CONSTRUCTION OF SCHOOL LAW. A board of directors of a school district may, under § 8 and the provisions of § 1 of chapter 52, Laws of 1858, bind the corporation by contracts entered into after the election of their successors and before their qualification.

2. BOARD OF EDUCATION: CURATIVE ACT. The Board of Education has power to legalize and confirm the acts of *de facto* officers acting under a school law which has been declared invalid.

3. CORPORATION: RATIFICATION OF CONTRACT. A school district may, through its officers, ratify or adopt any contract made by officers *de facto*, if the officer ratifying such unauthorized contract had authority to bind the corporation; and contracts made in the name of a corporation, before it has a legal existence, may be so ratified and adopted after it is incorporated.

Dubuque Female College v. The District Township of the City of Dubuque.

*Appeal from Dubuque District Court.*

SATURDAY, OCTOBER 11.

ON the 12th day of November, 1858, defendant leased from plaintiff a certain building known as a Female College "for a school of a high grade," &c. By the terms of the lease it was provided that if the electors of the district at the election on the second Monday in March, A. D., 1859, determined by ballot to purchase said building for $12,500, the lease was to terminate and the sale to be made. This agreement was signed by the trustees of the college and by Wiltse, Bissell and Cook as the "District Board of Directors of Township of city of Dubuque." This Board was elected on the first Monday in May, 1858. An election was held as contemplated by the lease, which resulted in favor of the purchase. A deed was accordingly made for the consideration of $12,500 of date March 17, 1859, and a mortgage of same date signed by the same Directors, to secure the purchase money. This action is brought to foreclose this mortgage. The defense is a want of power to make it or to take and hold the property. Decree for plaintiff and defendant appeals.

*Burt, Angell & Lyon* for the appellant, contended : 1. That the referee erred in finding facts in the case not embraced in the statement of facts agreed upon. 2. That he erred in finding that the Board of Education legalized the existence of the District Township of Dubuque, as constituted by the act of March 12th, 1858 ; parts 1 and 8, school laws of Iowa. 3. The referee erred in finding that the District Township of Dubuque, at the time of the execution of the deed from the plaintiff, and of the mortgage claimed on had a separate existence as an independent school district, and was capable of receiving title and executing a mort-

gage; parts 8 and 18 of the school laws; *Falconer* v. *Higgins*, 2 McLean C. C. R., 196; *Fire Department of New York* v. *Kiss*, 10 Wend., 266; *The District Township of the city of Dubuque* v. *The city of Dubuque*, 7 Iowa, 262; *High School, &c., Clayton County*, 9 Id., 175. 4. The referee erred in finding that H. A. Wiltse, F. E. Bissell and P. B. Cook, had power and authority to make the purchase and accept the deed, and execute the mortgage claimed on as the act and deed of this defendant, and that the same is valid against this defendant. See former authorities referred to above. 4 Kent, 462 (marg.); 9 John., 73; *Hosubeck* v. *Westbrook*, Hobson, 33; Ang. & Ames Corporations, § 176; *Miller* v. *Chittenden et al.*, 2 Iowa, 315.

*Bissell & Shiras* for the appellee.

WRIGHT, J. — The directors, Wiltse, Bissell and Cook were elected in May, 1858, and their successors on the second Monday (14th) of March, 1859. By the 8th section of chapter 52, Laws of 1858, taken in connection with the provision in the 1st section, these officers were elected for one year, and until their successors were elected and qualified. And while, therefore, by a change of legislation their successors were elected prior to the making of this contract, yet as they did not qualify until after, (to wit, on the 19th of March,) their right to contract thus for, is beyond controversy.

But it is denied that the district had any existence as an independent school district, or that it was capable of receiving a title or executing a mortgage. And while it is conceded that this power existed by the terms of the act of March 12th, 1858, (ch. 52, p. 57,) yet the argument is that this act was void for conflict with the Constitution; that it was so declared by this court (7 Iowa, 262); and that there has been no legislation by the General Assembly

or Board of Education, legalizing the acts of officers in city districts, or authorizing their formation, or at least, none prior to the making of this mortgage. And while it is also admitted that the district was organized under the act of March, 1858, and that Wiltse and others were elected directors under that act and organization, yet it is urged that as said act was void, so was that election; and that it was not until the 19th of March, A. D., 1859, when the new board was qualified, that officers existed capable of making a contract. The deed and mortgage being void therefore, as appellant insists, it is further claimed that they cannot be made valid by ratification, but alone by a new execution and delivery.

The city of Dubuque was a separate school district before the act of March 12, 1858 (Laws of 1857, p. 354). By the act of 1858, each civil Township was declared a school district, and each incorporated city including the territory annexed thereto for school purposes, containing not less than one thousand inhabitants, was invested with like corporate powers—the officers therein were to be elected in the same manner—were to possess and exercise the same powers, and perform the same duties as required of like officers in other districts; and in all respects such (city) districts were subject to the provisions of the general law, so far as applicable. This act was declared invalid on the 9th of December, 1858. On the 15th of that month the Board of Education declared that all elections which had been held—all acts done and contracts made—any tax levied—any rights acquired under said act of March, 1858, were legalized and confirmed as fully and effectually as though the same had taken place under legal enactment. December 24th, 1858, a general school law was passed by the Board of Education, but this failed to contain the provision of the Act of 12th March on the subject of incorporated cities and towns. By the 5th section, however, "Every

school district which is now or may hereafter be organized in this State," is made a body corporate by the name of " the district Township of          in the County of          and State of Iowa.'' On the same day an Act was passed conferring certain powers on towns and cities for school purposes. By this it is provided that any city or incorporated town, including the territory annexed thereto for school purposes, may constitute a separate school district. At the request of ten voters the municipal authorities are required to provide for the taking the sense of the people on the subject within the contemplated limits by means of a public ballot. Should a majority vote in favor of a separate organization, an early day is to be fixed for the election of a district board, having the same general powers, &c., as attach to a like board in the township districts. This board is to consist of a President, Vice-President, Secretary, Treasurer, and three Directors.

These are all the provisions bearing upon the question involved. Under this last act the city of Dubuque did, in February, 1859, vote in favor of a separate organization, and in March elected a board, who were qualified on the 19th of that month. In giving a construction to these acts, we remark that we think it was competent for the Board of Education to legalize and confirm the acts of officers elected, and transacting business, under that declared invalid. They were officers *de facto*, and the same power which the General Assembly possesses upon general subjects in legalizing and confirming the acts of officers or persons in the discharge of any particular trust or duty, the Board of Education possesses in relation to common schools and the school system. The question is whether this power has been exercised in this particular instance, so far as to continue in existence, and bring the districts provided for in the 1st section of the act of 1858—which we style the city or town districts—without action on the part

of the municipal authorities and people to organize under the Act of December 24th, 1858, conferring " certain powers on cities and towns." This question is one of difficulty. Its determination is not necessary from the view we take of another point in the case, and as we should probably not be unanimous in the construction to be given to this legislation, we deem it best to leave it open—and especially so as from our peculiar legislation the question is of but little practical importance.

The other question is whether it was competent for the Board elected in March, 1859, to ratify and adopt the act of their predecessors, and whether this has been done, so far as to make valid and binding the contract and mortgage touching the " High School property." And upon this subject we entertain no doubt. Without referring to all these acts, it is sufficient to say that from March 23, 1859, until the commencement of this action in May 1861, there was one unbroken series of acts recognizing the validity of the contract, showing that the property was in the possession of and used by the district — that repairs were made upon it — that negotiations were carried on to arrange the debt and procure time for its payment — had the same insured — all which matters appear from the records of said board. These officers had authority to execute this mortgage — and whatever they could do directly, their subsequent ratification would legalize and make valid. The district is a corporation and through its officers it could adopt any contract of those acting de facto — if the officers so ratifying the unauthorized act had authority to make such contract.

. Appellant insists however, that there could be no ratification, for the reason that the corporation for which these persons assumed to act had no existence at the time of the conveyance and deed, and that the authorities on the subject of ratification all refer to existing corporations. Such

is not our understanding of the rule. It is well settled that a board may accept a contract by a vote or by a tacit and implied assent. And the same rule applies to the appointment of an agent by a corporation. *Bank* v. *Dandridge*, 12 Wheat., 83. The same presumptions are applicable to corporations as to natural persons. Ang. & A. Cor., § 284. As applicable, see *Dunn* v. *St. Andrews Church*, 14 John., 118, where the plaintiff was held entitled to compensation for his services without proof of an express promise — without evidence of a vote appointing him — but upon the ground that the records of the corporation contained entries of the payment of money to him for his services from which an implied promise was found. And see *Merrick* v. *The Burlington and Warren Plank Road Company*, 11 Iowa, 74.

If a corporation ratify an unauthorized act of an agent, then as in the case of natural persons, the ratification is equal to a prior authority. And an act done before may be adopted after the incorporation, so as to be equally binding and conclusive. As a natural person may adopt and take the benefit of an act in relation to property in which at the time of its occurrence he had no interest whatever, but in which he subsequently acquires an interest, so may a corporation on contracts made prior to its existence. The two cases of *Goody* v. *Colchester and Stoner & Valley Railway Company*, 15 Eng. L. & E., 596, and *Preston* v. *Liverpool, &c., Company*, 7 Id., 124, are in point.

Affirmed.