# WHEELING.

## PENNSYLVANIA LIGHTNING ROD CO. v. BOARD OF EDUCATION OF CASS TOWNSHIP.

Submitted June 12, 1882—Decided October 14, 1882.

1. Corporations created by statute must depend, both for their powers and the mode of exercising them, upon the true constrction of the statute creating them. (p. 365.)

2. The statute, *quoad* the corporation, is an enabling act, not only in regard to the powers conferred, but also as to the mode prescribed for exercising those powers, and unless the mode so prescribed is observed by the corporate body its acts will not bind the corporation. (p. 366.)

3. The members of a corporation aggregate cannot separately and individually give their consent, or enter into a contract, in such a manner as to oblige themselves as a collective body or board. (p. 368.)

4. Under the provisions of chapter forty-five of the code of 1868, by which each board of education of the several townships of the counties of the State is created a corporation and its duties prescribed, the members of such board, acting individually and separately and not as a board convened for the transaction of

business, cannot make a contract or promise that will obligate or bind them as a corporation. (p. 368.)

5. As such board can be expressly bound only by joint and corporate acts, so it is only from such acts, done either by the board as a body, or by its duly authorized agents, that any implication can be made binding it in law.   (p. 369.)

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Monongalia, rendered on the 20th day of March, 1878, in an action in said court then pending, wherein the Pennsylvania Lightning Rod Company was plaintiff, and the Board of Education of Cass township was defendant, allowed upon the petition of plaintiff.

Hon. A. B. Fleming, judge of the second judicial circuit, rendered the judgment complained of.

The facts of the case are fully stated in the opinion of the Court.

*Berkshire & Sturgiss* for plaintiff in error cited 2 Abb. Dig. 27, 28, 32—36, *Id.* 125 § 21.

*P. H. Keck* for defendant in error cited the following: Ang. Corp. p. 106 § 4; *Id.* p. 177 § 8; Abb. Nat. Dig. p. 13 § 14; 11 Wheat. 392; Code ch. 45 § 5; Abb. Nat. Dig. p 27 §§ 124–128; *Id.* p. 27 § 97; 1 Whar. §§ 662, 663.

Snyder, Judge, announced the opinion of the Court:

On the 7th day of October, 1872, the plaintiff brought an action of *assumpsit* in the circuit court of Monongalia county to recover from the defendant, the Board of Education of Cass township, in said county, two hundred and one dollars and fifteen cents, the price of lightning rods furnished and erected by it on the various school houses in said township at the request of the defendant.    To this action the defendant pleaded *non-assumpsit* and issue was thereon joined.   The case was continued on the record until the March term, 1878, at which a trial was had before a jury and a verdict found for the defendant. The plaintiff moved the court to set aside the verdict upon the ground that it was contrary to the evidence, which motion the court overruled, and on the 27th day of March, 1878, entered judgment for costs against the plaintiff.   During the trial the plaintiff took four several bills of exceptions

which were signed and made parts of the record. The first states, that, after the plaintiff had introduced evidence tending to prove a contract made by it, in 1871, with a majority of the members of the Board of Education of Cass township for the erection of lightning rods as in the declaration mentioned, but not at a meeting of said Board assembled for the transaction of business, but separately and apart from each other, the plaintiff moved the court to instruct the jury :

"That a majority of the said Board, at the time of the alleged contract, were competent to make the same."

The court refused so to instruct the jury, but gave the instruction with this addition thereto :

"If made as a Board convened for the transaction of business."

To so much of the instruction as contains the words added by the court, and to the giving of the instruction with said addition, the plaintiff excepted.

The second bill of exceptions shows, that the plaintiff, after introducing evidence tending to prove the same facts set out in the first, moved the court to instruct the jury :

" That the acts of a majority of a body politic (such as the Board of Education of Cass township was in 1871), are binding on the whole corporation when confined to its ordinary transactions and consistent with the original objects of its formation."

Which the court also refused to give, but gave the same with these words annexed thereto :

" But such acts must be those of the Board convened for the transaction of business as a Board."

To the adding of said words, and to the giving of the instruction with such addition, the plaintiff again excepted.

The third bill of exceptions states, that after the plaintiff had introduced evidence tending to prove, that it by its duly appointed agent, in July, 1871, contracted and agreed with all the members of the said Board, separately and apart from each other, except the secretary, and not in Board meeting, to furnish and erect, on eight public school houses in Cass township, the lightning rods, upon the terms set forth in the plaintiff's declaration, and that each of said members, except the secretary, agreed and consented when separate and apart as aforesaid that the plaintiff might so furnish and erect the

said rods, and that it did accordingly furnish and erect the said rods on said school houses according to said agreement twenty days or more prior to the 12th of August, 1871, and immediately afterwards delivered to the president of said Board a written guarantee as to the quality, &c., of said rods which it was required to do under its said contract with the members of said Board, and he received and accepted said guarantee on behalf of the Board without objection, but which acceptance was not at a Board meeting nor in the presence of any other member of the Board; and then the defendant offered to read in evidence to the jury a copy of the proceedings of said Board at a special meeting held August 12, 1871, without proving that the plaintiff had ever been notified of the action of the Board at said meeting, to the reading of which the plaintiff objected, but the court overruled said objection and said proceedings were read and the plaintiff excepted. The proceedings thus read are as follows:

"At a special meeting of the Board of Education of Cass township, Monongalia county, West Va., officers present— James A. Miller, president; A. J. Maple and A. Evans, clerk A. S. Halfin, held at Stumptown, in Cass township, county and State aforesaid, on the 12th day of August, 1871, the following business was transacted:

"On motion, it was ordered, that the Pennsylvania Lightning Rod Company be notified to remove the rods from the school houses in Cass township, as they had put them on without consent of the Board. No business further being before the Board, they then adjourned.

"A. S. HALFIN, *Secretary.*

"I certify that the above is a true copy of the proceedings of the Board of Education of Cass township at their meeting on the 12th day of August, 1882.

"D. WILDMAN, *Secretary.*"

The fourth and last bill of exceptions, after giving a statement of the facts, which the evidence of the plaintiff tended to prove, substantially as that contained in the third exception, states that the defendant asked the court to instruct the jury:

"That before the jury can find for the plaintiff, they must

find from the evidence that the defendant, as a Board of Education of Cass township, contracted to and with the plaintiff for the purchase and erection of the lightning rods in the declaration and bill of particulars mentioned, either by itself as such Board in session, or by an agent appointed by it in session to contract for the same, or that said Board, as such, afterwards ratified, assented to or accepted said rods and work."

To the giving of which instruction the plaintiff objected, but the court overruled the objection and gave said instruction to the jury and the plaintiff excepted.

In my view of the subject, the first, second and fourth bills of exceptions raise but a single legal question and may, therefore, be considered together. If the individuals, except the secretary, composing the Board of Education of Cass township, as constituted in the year 1871, as such individuals, acting separately and apart from each other and not as a Board, could make a contract, binding upon the defendant, for furnishing and erecting lightning rods on the public school houses of said township, then the action of the court complained of by the plaintiff in each of said exceptions was erroneous, otherwise it was not.

In ancient times, it was held that corporations aggregate could do nothing except by deed under their common seal. But this principal must always have been understood with many qualifications; and seems inapplicable to acts and votes passed by such corporations at corporate meetings. It was probably, in its origin, applied at common law and limited to such solemn proceedings as were usually evidenced under seal, and to be done by those persons who had the custody of the common seal, and had authority to bind the corporation thereby, as permanent official agents. Be this as it may, the rule has been broken in upon in a vast variety of cases in modern times, and cannot now, as a general proposition, be supported. A corporation, like a natural person, can grant or convey land only by deed; yet there are many things which it has power to do otherwise than by deed. It is now firmly established, both in England and America, that a corporation may be bound by promises, express or implied, resulting from the acts of its authorized agents, although such

authority be conferred only by virtue of a corporate vote unaccompanied with the corporate seal.  *Bank of U. S.* v. *Dandridge*, 12 Wheat. 64; *The Banks* v. *Poitiaux*, 3 Rand. 136.

In this country the authorities are uniform, that acts of a corporation evidenced by vote, written or unwritten, are as binding upon, and as complete authority to its agents, as acts done under the corporate seal; and that promises may as well be implied from its acts and the acts of its agents as in the case of individuals.  *Board of Education* v. *Greenebaum*, 39 Ill. 609; *Merrick* v. *Burlington*, 11 Iowa 74; *Petrie* v. *Wright*, 14 Miss. 647; *Buckley* v. *Briggs*, 30 Mo. 452; *Smith* v. *Proprietors, &c.*, 8 Pick. 178.

But whatever may be the implied powers of aggregate corporations at common law, and the modes by which those powers are to be carried into operation, corporations, either private or public, created by statute must depend, both for their powers and their mode of exercising them upon the true construction of the statute creating them.   They are precisely what the statute has made them; they derive all their powers from the statute; and are capable of exerting their powers only in the manner prescribed, or authorized by it.  *Head* v. *The P. Ins. Co.*, 2 Cranch 150; *Perrine* v. *C. & D. Canal Co.*, 9 How. 182; *People* v. *Utica Ins. Co.*, 15 Johns. 358.

The alleged contract or promise in the case at bar, having been made in the year 1871, the provisions of chapter 45 of the Code of 1868, which was the only statute in force at that time, relating to the subject, must govern this case.   This chapter provides:   That the voters of each township shall elect three school commissioners—sec. 1; that these commissioners and their secretary shall constitute the township Board of Education, and as such, they and their successors, shall be a corporation by the name of "The Boaard of Education of the township of ——," but the secretary shall have no vote as a member of said Board—sec. 5; that said corporation shall be the owner of all the real and personal property belonging to the free schools in their township—sec. 6; that at the first meeting and annually thereafter the Board shall organize by the election of a president from their number and a secretary.   "The secretary shall attend all meet-

ings of the Board, *and record all their official proceedings in a book* to be kept for the purpose, and attest such record by his signature; and the same shall at all seasonable times be open to the inspection of any person interested," &c.—sec. 8 ; and that the said Board shall provide, by purchase, building or other-. wise, suitable school houses and grounds in their township, and also such furniture, fixtures and appendages for the said school houses as the comfort, health and convenience of the scholars may require ; and keep such grounds, school houses, furniture, fixtures and appendages in good order and repair —sec. 37.

These are substantially the provisions of the statute materially bearing upon the question under consideration.   And it will be observed that they make it the duty of the Board of Education to build and repair the school houses and provide the necessary furniture and fixtures.   This would, I apprehend, confer the power to purchase and erect on the school houses lightning rods; and thus the alleged contract, if made by the Board, was within its legitimate exercise of authority. But the serious enquiry still remains, and that is, can the individual members of the Board, acting separately and not as a body, make a contract that is valid and obligatory on the Board as a corporation ?   To arrive at a proper solution of this enquiry, it must be kept in view that, upon the principles and authorities before referred to, the statute is the source not only of all the power possessed by the corporation, but also of the mode and manner of exercising that power. The statute, as to the corporation, is an enabling act, and confers all the powers it possesses.   Unless the Board or Education acts in the manner prescribed by the statute, it necessarily acts without authority.   The grant which enables it to contract prescribes the mode of contracting and, unless that mode is observed, the act will no more create a contract obligatory on the corporation than if it had never been incorporated.   Applying these principles, we find that the eighth section of the statute prescribes specifically the mode and manner in which the body shall conduct its proceedings. It provides that, "*the secretary shall attend all meetings of the Board and record all their official proceedings in a book* to be kept for that purpose, and attest such record by his signa-

ture." This provision is imperative and requires the secretary to record *all official proceedings*. It does not require the secretary to attend the members of the Board, but only the meetings of the Board, and he is the only person commanded to record the proceedings. If the members could perform official acts, acting separately and apart from each other, then such acts must necessarily remain *in pais* and unrecorded, because there is no provision for recording such acts. It seems to me the proposition is too plain for discussion. The Legislature surely never contemplated that either a majority or all the individuals, composing the Board, acting separately and not in a body, should have the power to make contracts or perform other official duties. It seems to me that both the letter and spirit of the statute condemns such a construction. It is not necessary in this case to decide whether or not, if the Board, regularly convened for the transaction of business, should, as such Board, make a contract within the legitimate powers conferred upon it by the statute, and no record of its action appeared on its books, the making of such contract might be proved by parol evidence. The policy and, perhaps, the letter of the statute would seem to preclude such evidence. The conduct and official acts of public officers and agents ought to be open to inspection, but if they are allowed to be proved by parol evidence their existence can only be known by enquiry of those who did the acts. Such a principle would certainly be unwise, especially when applied to important acts. But as the question does not arise in this case it is not, therefore, decided.

It may be proper to say further, in support of the construction hereinbefore claimed for this statute, that when a duty is conferred upon a body of two or more persons, it is a legal presumption that one, if not the principal, object is to have the concurrent counsel and deliberation of all, or at least a majority, of such persons, acting together and comparing views with each other in reference to the duty to be performed. If the persons or agents are permitted to act separately and apart from each other all the benefits of such concurrence are destroyed. Such separate action of the members of a Board of Education is not authorized by the statute. 1 Dill. on Mun. Corp. § 455.

This conclusion is, also, sustained by authority in matters similar, as the following will show:

"The act of the major part of the Board, is the act of the whole, and binds the corporation; but this must, on general principles, be done at one and the same time, and at a meeting held for the purpose." Kyd. on Corp. 309.

"The members of a corporation aggregate cannot separately and individually give their consent in such a manner as to oblige themselves as a collective body; for in such case it is not the body that acts; and this is no less the doctrine of the common law than the Roman civil law." Ang. & Ames on Corp. §§ 232, 229 and 239.

Therefore, upon reason and authority, we are of opinion, that the members of the Board of Education of Cass township, acting individually and separately and not as a Board, were not authorized by the statute to make a contract or promise that would bind them as a corporation, and that, as a result therefrom, the circuit court did not err in its action in the matter complained of in the plaintiff's first, second and fourth bills of exceptions.

The plaintiff in error claims that it was obvious error to allow the defendant to read to the jury the proceedings of the Board contained in the third bill of exceptions; because the said proceedings were had subsequent to the time the cause of action arose and are in effect declarations of the defendant on its own behalf. Is this claim sustained by the record?

If this evidence could have had any influence on the case, it could only have done so as tending to show that the defendant had not accepted the work or ratified the alleged contract. It does not appear from the plaintiff's exception that it offered any evidence tending to prove such acceptance or ratification by the Board. It is true the exception shows that the plaintiff notified the the president of the Board, but this was after the work had been completed. It nowhere appears, aside from the evidence tending to prove the alleged contract which we have held did not bind the defendant, that the Board, or any member of it, had any knowledge or notice before the work was completed that it was being done; and so far as the record shows the resolution of August 12, 1871,

may have been adopted by the Board at the first opportunity after it had notice that the plaintiff had done the work of putting the lightning rods on its school houses. If such is the fact, and as the contrary does not appear, this Court must in this case presume that it is such, then good faith to the plaintiff and justice to the Board required it to pass said resolution, and it was proper evidence to repel any presumption of bad faith or ratification of the act by the defendant, and should have been admitted as evidence to the jury.

But, as we have endeavored to show the members of the Board, acting individually, could not make a contract binding upon the Board as a corporation, it necessarily follows that no acts or assent by them as individuals could operate as a ratification of what had been done. They could not do indirectly what they had no power to do directly. "As corporations can be expressly bound only by joint and corporate acts, so it is only from such acts, done either, by the corporation as a body, or by its authorized agents, that any implication can be made, binding it in law." Ang. & Ames on Corp. § 239.

Thus from any view taken of said evidence, it could not, so far as the record here discloses, have operated to the prejudice of the plaintiff; and consequently its admission by the circuit court furnishes no proper ground for the reversal of the judgment, whether proper evidence of itself or not.

Upon consideration of the whole record we are, therefore, of opinion that the judgment of the circuit court must be affirmed with costs to the defendant in error and thirty dollars damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.